## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

NIELSEN CONSUMER LLC d/b/a NIELSENIQ,

<div style="margin-left:2em">Plaintiff,</div>

<div style="margin-left:2em">v.</div>

THE NPD GROUP, INC.,

<div style="margin-left:2em">Defendant.</div>

Civil Action No.:

**REDACTED COMPLAINT**

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

Plaintiff Nielsen Consumer LLC d/b/a NielsenIQ ("NielsenIQ" or "Plaintiff"), by and through its attorneys, hereby submits this Complaint against defendant The NPD Group, Inc. ("NPD" or "Defendant") as follows:

### INTRODUCTION

1.     This case arises out of NPD's breach of contract and misuse and misappropriation of NielsenIQ's confidential and proprietary information and trade secrets.

2.     NielsenIQ invested direct funding into NPD, as well as years of internal financial resources and contributed proprietary and confidential information, know-how, and trade secrets to enable NPD to expand its then-existing app called ReceiptPal into a viable consumer packaged goods ("CPGs") data (███████████████) collection engine.[1]

---

[1] ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████ A true and correct copy of the Agreement is attached hereto as **Exhibit A** and incorporated herein by reference.  A true and correct copy of the parties' Amendment No. 1 to the Agreement (the "Amendment") is attached hereto as **Exhibit B** and incorporated herein by reference.

3. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████

4.      Beginning in or around January 2022, NPD sought to expand its consumer panel relationship with NielsenIQ.  When NielsenIQ declined the expansion proposal on the terms presented by NPD, NPD threatened to license to NielsenIQ's competitors ██████████ from a "shadow-panel," misappropriating NielsenIQ's confidential information and intellectual property that was relied on to collect and develop this ████████████ and, in fact, embodies NielsenIQ's confidential and proprietary intellectual property.

5. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████

6.      More recently, on April 7, 2022 – and after months of dissembling and misleading NielsenIQ about its plans – NPD announced that it had formally agreed to merge with NielsenIQ's most aggressive competitor, Information Resources Inc. ("IRI").

7. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

8. In this action, NielsenIQ seeks to protect its contractual exclusivity rights, trade secret and confidential information and know-how, and intellectual property rights, including by obtaining a preliminary and permanent injunction, as well as a separate award for money damages in an amount to be specifically determined at trial.

## PARTIES

9. Plaintiff NielsenIQ is organized and existing under the laws of Delaware and has its principal place of business at 200 W. Jackson Blvd. Chicago, IL.

10. NielsenIQ is a stand-alone company formed from Nielsen Holdings Inc.'s Global Consumer Business Group. Since 1923, NielsenIQ (and its predecessor group) have provided businesses with data and analysis to help them make shopper-centric decisions with a complete picture of consumer habits and trends, innovate products to consistently meet consumer demands and advance their businesses, refine product assortment and availability to the correct consumer segments, identify avenues for revenue growth to bring more competition to consumer markets, and streamline how information is shared across systems to drive collaboration.

11. Defendant NPD is organized and existing under the laws of Delaware and has its principal place of business at 900 West Shore Road, Port Washington, NY 11050.

12. NPD is a market research company that provides market information and advisory services for general merchandise.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over NielsenIQ's trade secret claims pursuant to 28 U.S.C. § 1331.

14. This Court has supplemental jurisdiction over NielsenIQ's state-law claims pursuant to 28 U.S.C. § 1367, because the claims are related to claims over which this Court has original jurisdiction such that they form part of the same case or controversy with those claims under Article III of the Constitution.

15. This Court has personal jurisdiction over Defendant NPD because Defendant NPD is domiciled in the state of New York and because Section 13.6 of the Agreement provides that "[a]ny disputes will ultimately be settled in courts located in New York, New York."

16. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3) because Section 13.6 of the Agreement provides that disputes between the parties "will ultimately be settled in courts located in New York, New York."

## FACTUAL BACKGROUND

### A. The Consumer Packaged Goods Market

17. NielsenIQ provides manufacturers and retailers with data and tools that help them understand consumer behavior in their markets and use that knowledge to grow their businesses.

18. Specifically, NielsenIQ collects and licenses market sales and consumer information to retailers and manufacturers of CPGs. CPGs are products that consumers frequently use and replenish, including, for example, grocery items (e.g., produce, meat, seafood, dairy), household care items, pet supplies, and health or beauty items.

19. NielsenIQ uses the data it collects and creates to help brands and companies better understand consumer behavior and how that behavior drives product sales and purchasing trends.

20. NielsenIQ uses consumer panels to collect, organize, and analyze consumer shopping data.

21.     A consumer panel is a method of gathering ongoing data from shoppers in which market researchers collect purchasing data directly from a group of shoppers, referred to as "panelists," to gain insight into their attitudes, behaviors, and purchasing habits.

22.     The data collected in a consumer panel creates many data points including, but not limited to, consumer demographics, how much they purchase, what brands they consider, how often they shop, what percentage of them buy a certain product, and what brands they buy repeatedly.

23.     ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████

24.     For over thirty years, NielsenIQ has operated a Homescan Consumer Panel, in which ongoing data is gathered from panelists by having them manually scan barcodes of all their purchases to collect and analyze CPG data.

25.     In 2010, NielsenIQ and IRI formed a joint venture called the National Consumer Panel, in which panelists either scanned barcodes of purchases using a handheld barcode reader or a mobile application with a barcode reader to collect CPG data.

26.     While this meant that the two companies shared the carrying costs for the panel, it also meant that both had access to the same CPG data, so differentiation between the companies was limited to the quality and consistency of the services provided and each company's ability to add supporting analytics for users to better understand the data and the impacts they may have on consumer purchasing habits.

27.     In addition, the method of manually scanning data could not track online purchases.

28.     In 2014, NielsenIQ began looking into ways to obtain additional unique data sets and for less burdensome ways to collect online receipts, which was particularly important given the increasing prominence of e-commerce.

29.     NielsenIQ developed ShopTracker, a mobile application that allowed NielsenIQ to collect consumer purchase data from a participating consumer's Amazon.com account.

30.     ShopTracker captured increased e-commerce data but did not address issues with capturing data on purchases made outside the home for immediate consumption (e.g., purchasing a bottle of soda at the drugstore for immediate consumption).

31.     Around this same time period, NielsenIQ also began looking into partnering with NPD, a market research company that collected and licensed market sales and consumer information including point-of-sale data, consumer surveys, and consumer receipts.

32.     NPD focused on collecting raw data, reflecting purchases of CPGs by consumers through its ReceiptPal mobile application, which allowed users to take photos of receipts inside and outside of the home.

33.     NielsenIQ was interested in partnering with NPD on the development of ReceiptPal. ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████

███     ████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

**B.**     **NielsenIQ and NPD Enter Into an Exclusive License for NielsenIQ to Use** ███████████

■     ███████████████████████████████████████████

███████████████████████████████████████████████████

■     ███████████████████████████████████████████

███████████████████████████████████████████████████

■     ██████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████

■     ██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

■     ████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████

■     ██████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████.

41. The license of ████████ from NPD to NielsenIQ was exclusive. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████

42. ████████████████████████████████████

████████████████████████████████████████████████

██████████████████████

43. ████████████████████████████████████

████████

■ ████████████████████████████████████████

████████████████████████████

■ ████████████████████████████████████████

██████████████████████████

46. ████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

■ ████████████████████████████████████████

██████████████████████████████████████

████████████████████████

48. ████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████

   ██    ████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████

50.   ████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████

   ██    ██████████████████████████████████████████████

████████████████████████████████████████████

52.   NielsenIQ, meanwhile, had experience in this area due to its own mobile application, ShopTracker, which collects consumer purchase data from a participating consumer's Amazon.com account.

53.   ███████████████████████████████████████████

████████████████████████████████████████████████████

54.     Because other competitors in the market, including NielsenIQ's direct competitor, IRI, have not developed comparable capabilities to collect and analyze online receipts, the █████ ████████ would be an enormous differentiator in the market and provide significant value to NielsenIQ customers.

55.     ████████████████████████████████████████████████████████████████████████████████████████████████████

56.     ████████████████████████████████████████████████████████████████████████████████████████████████████

57.     ████████████████████████████████████████████████████████████████████████████████████████████████████

58.     ████████████████████████████████████████████████████████████████████████████████████████████████████

**C.** **The Explicit Provisions of the Agreement That Protect NielsenIQ's Intellectual Property and Confidential Information**

60. ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████

■ ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

62. ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

■ ███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████

64. ███████████████████████████████████████████████

███████████████████████████████

**D.** **NielsenIQ Provides NPD with Confidential Proprietary Information and Know-How and Trade Secrets**

65. ███████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████

   ██ ███████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████

67. ████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████

68. ████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████

69.     NielsenIQ regards this information and know-how as highly confidential, proprietary, and trade secret, and carefully protects this material and know-how.

70.     ████████████████████████████████████████████████████

████████████████████

71.     ████████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

72.     █████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████

73.     █████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████

74.     █████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████

75.   ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████

76.   ████████████████████████████████████████████████
███████████████████████████████████

   █   ████████████████████████████████████████
████████████████████████████████████████████
████████████████████

   █   ████████████████████████████████████████
██████████████████████████████████████

79.    Since 2018, many sellers, including Kroger, Walmart, and Instacart began to stop sending itemized email receipts.  This posed a problem because itemized receipts are required to collect useable data.

80.   ████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████

   █   ████████████████████████████████████████
██████████████████████████████████

   █   ████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████

14

**E.    NPD Indicates Plans to License the ████████████ to Third Parties, in Breach of the Agreement**

83.     In October 2021, after NPD was acquired by private equity firm, Hellman & Friedman, the parties' relationship rapidly began to deteriorate.

84.     Armed with NielsenIQ's technical skills, information, experience, and know-how, NPD has reaped the rewards of the Agreement.  But NPD now seeks to misuse these gains at NielsenIQ's expense.

85.     Shortly after the NPD acquisition by Hellman & Friedman, ████████████ ████████████████████████████, in January 2022, NPD demanded that NielsenIQ agree to pay NPD additional money for data from panelists whom NielsenIQ did not approve remaining part of the panel but retained by NPD, reiterating a request it made as early as June 2021.

86.     NielsenIQ declined because it wanted to focus on launching the existing product.

87.     NPD then informed NielsenIQ in or around January 2022 that if NielsenIQ would not buy the CPG data from the additional panelists, then NPD would sell this "shadow panel" data to third parties, ████████████████████████████████ ████████████████████████████████████████ ████

88.     ████████████████████████████████████ ████████████████████

89.     Thus, NPD claimed, it was free to generate additional data using the same tools developed jointly with NielsenIQ – ████████████████████████████████ – in order to license that information to third parties, including direct competitors.

90. ███████████████████████████████████████████
███████████████████████████████████ ███████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████

91. ███████████████████████████████████████████
███████████████████████████████████████████
████

   ■ ██████████████████████████████████
███████████████████████████████████████████

93. ████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████
███████████████████████████████████████████
██████████████████████████

   ■ ██████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
█████████████████████

95. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

### F. **NPD's Planned Merger with IRI**

96.     In February 2022, NielsenIQ learned that NPD was in merger talks with IRI, NielsenIQ's direct and most significant competitor.

97.     ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████

98.     In response, NPD refused to either confirm or deny whether it would merge with IRI, and, if so, how it would protect NielsenIQ confidential know-how and trade secret information or ensure that the ██████████████ would not be used to compete with NielsenIQ.

99.     Instead, NPD argued that NielsenIQ's concerns were premature. ██████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████

100.    However, upon information and belief, NPD was already significantly engaged in discussions with IRI to merge at the time NielsenIQ contacted NPD to request confirmation.

101. ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████

102. ████████████████████████████████████████████

██████████████████████████████████████████

103. On April 7, 2022, IRI and NPD publicly announced that the two companies were merging.

**G.** **NPD's Threatened Misappropriation of NielsenIQ's Trade Secrets and Confidential Information**

104. NPD's merger with IRI poses a threat of improper use of NielsenIQ's confidential and proprietary information and trade secrets, misappropriating the trade secrets and confidential information, and breaching NPD's duty to maintain the confidentiality of NielsenIQ's confidential information.

105. NPD knowingly and intentionally disregarded its obligations under the Agreement and NielsenIQ's warnings and proceeded to agree to a merger with IRI.

106. As part of a newly formed entity with IRI and in continuing to use the current version of ReceiptPal and its resulting ████████████ (including the "shadow panel" data), which are the products of and embody NielsenIQ's proprietary confidential and trade secret information, NPD will necessarily misuse NielsenIQ's trade secrets, confidential, and proprietary information to compete against NielsenIQ.

107. This use or threatened use of NielsenIQ's confidential, trade secret, and proprietary information is in direct violation of the Agreement as well as NielsenIQ's reasonable

expectation that NPD would honor its written and other assurances to use NielsenIQ's trade secrets, confidential, and proprietary information only as authorized by NielsenIQ.

108.    NielsenIQ's trade secrets, confidential, and proprietary information are threatened by NPD's merger with IRI, and NPD has not provided any assurances that it has and will take reasonable measures to protect NielsenIQ's information.

109.    In short, NPD's actions threaten imminent and improper use and disclosure of NielsenIQ's protected trade secrets and other confidential information to its direct competitor.

110.    Such disclosure will irreparably harm NielsenIQ.

**H.    IRI's Attempts to Develop a Panel That Tracks Online Purchases and Competes Directly with NielsenIQ**

111.    In recent years, IRI has repeatedly and improperly sought avenues to catch up with NielsenIQ's more advanced and accurate consumer data offerings.

112.    For example, in May 2021, NielsenIQ learned that IRI was surreptitiously attempting to use the National Consumer Panel, the joint venture between NielsenIQ and IRI that shares data from panelists who manually scan barcodes of their purchases, to develop its own receipt panel that could more easily gather data on online purchases.

113.    IRI's attempt to create an additional panel was eventually revealed and halted because it violated its joint venture agreement with NielsenIQ, which does not allow either IRI or NielsenIQ to leverage the National Consumer Panel to create a stand-alone new panel for one party's sole use.

114.    Unable to unilaterally use the joint venture to create a panel that better tracks online purchases, IRI then acquired Coin Out Inc. ("Coin Out") in 2021.

115.    Like NPD, Coin Out has a mobile application that allows purchasers to take photos of their receipts after making purchases.

116. However, Coin Out's application lacked key technological capabilities that ReceiptPal could deliver, such as the ability to capture receipt images and link to email and credentialed retailer accounts.

117. Unlike NielsenIQ's significant investment in ReceiptPal, upon information and belief, IRI has not made a similar investment in Coin Out, and Coin Out lacks significant comparable functionality to ReceiptPal as a tool for CPG data collection.

118. To date, IRI has been not been able to commercialize any data received from Coin Out.

119. Having failed to unilaterally use the Joint Venture to create an application that could capture online purchases or develop and commercialize Coin Out, IRI now seeks, with the help of NPD, to merge and gain access to the technology and Licensed CPG Data developed with NielsenIQ's substantial investment and collaboration.

120. Upon information and belief, access to ReceiptPal, in which NielsenIQ's confidential information and trade secrets are embedded, its resulting ███████████, which is the product of NielsenIQ's significant investment and confidential information, and the corresponding ability to compete with NielsenIQ, are the reasons IRI now seeks to merge with NPD.

I. **NielsenIQ Will Be Irreparably Harmed If NPD Shares the ███████████ or Uses It to Compete with NielsenIQ**

121. If NPD is allowed to violate the exclusivity provision of the Agreement and use and disclose NielsenIQ's trade secrets, confidential, and proprietary information, then NielsenIQ will be harmed in a number of ways.

122.     Most obviously, NPD's merger and resulting violations of the Agreement will result in clear monetary damage ████████████████████████████████████████ ████████████████████████████████████████████████

123.     However, NPD's failure to honor its contractual obligations and threatened misappropriation of trade secrets and confidential information will also harm NielsenIQ in ways that cannot be compensated merely by monetary damages.

124.     As a result of NPD's conduct, NielsenIQ is threatened with irreparable harm – significantly and in the long-term – ██████████████████████████████████ ████████████████████████████████████████████████████ ███████████████

125.     █████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████████████████████ ████████

126.     Upon information and belief, IRI has already reaped the benefits of the announced merger to increase its market share in the ████████ segment.  Upon information and belief, ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████

127.     █████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████

128. ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

    ██████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████

130. ██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████

    ████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████

    ████████████████████████████████████████

██████████████████████████████████████████

    ████████████████████████████████████████

█████████████████████████████████████

    ████████████████████████████████████████

██████████████████████████████████████

135. ██████████████████████████████████████

████████████████████████████████████████████

136. ███████████████████████████████

████████████████████████████████████████

████████████████████████

██  ████████████████████████████████

████████████████████████████████████

138. ███████████████████████████████

████████████████████████████████████████

███████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████

141. ████████████████████████████

████████████████████████████████████████

█████████████████████████████

████████████████████████████████████

████████████████████████████████████████

███████████████

143. ████████████████████████████

████████████████████████████████████████

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

145.    As a result, NielsenIQ has been forced to bring this action to enforce its valuable

confidential information and intellectual property rights and its Agreement with NPD.

**FIRST CAUSE OF ACTION AGAINST DEFENDANT**
**(Declaratory Judgment under 28 U.S.C. § 2201 of Breach of Contract by NPD)**

146.    NielsenIQ restates, re-alleges, and incorporates by reference each and every

allegation set forth in paragraphs 1 through 145 as though fully set forth herein, and incorporates

them by reference herein.

147.    A real and justiciable controversy also exists between the parties concerning their

respective rights and liabilities under the Agreement, for example, given Defendant NPD's

counsel's letters confirming that there is a disagreement and NPD's stated intention to license the

[REDACTED], which includes the "shadow panel" data, to third parties.  Granting such a

license would put NPD in immediate breach of the Agreement because [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

148.    A real and justiciable controversy exists between the parties concerning their

respective rights and liabilities under the Agreement given that Defendant NPD is on the verge

of consummating a merger with IRI, NielsenIQ's direct competitor, which NPD and IRI, in their

joint press release, have said they expect to conclude in 2022.

149. Such a merger would breach ███████ of the Agreement, ██████████████

████████████████████████████████████████████████████████████████████████████████

████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████

151. ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████

152. This trade secret and confidential information was provided to Defendant

pursuant to the parties' confidential relationship concerning the parties' work ███████

█████████████████████████████████

153. ████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████

154. ████████████████████████████████████████

████████████████████████████████████████████

███████████████████

155. Since the parties entered into the Agreement, NielsenIQ has at all times complied

with the Agreement, ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

███████

156. Despite NielsenIQ's compliance, █████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████

157. NielsenIQ further requests any and all ancillary relief necessary and appropriate

to effectuate the declaratory judgment.

158. WHEREFORE, NielsenIQ prays for judgment against NPD as set forth more fully

below.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT
### (Breach of Contract by Defendant)

159. NielsenIQ restates, re-alleges, and incorporates by reference each and every

allegation set forth in paragraphs 1 through 158 as though fully set forth herein, and incorporates

them by reference herein.

160. ████████████████████████████████████████

████████████████████████████████████████████

161. As alleged in paragraph 155, NielsenIQ has performed each and every one of its material obligations under the Agreement.

162. NPD has agreed to merge with IRI, NielsenIQ's most aggressive and significant competitor, ████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████ This merger is binding and is expected to close in the second half of 2022.

163. ████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████████ ████████ ████████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████

166. NielsenIQ has been damaged by NPD's breaches of contract in an amount to be determined at trial.

167. WHEREFORE, NielsenIQ prays for judgment against NPD as set forth more fully below.

## THIRD CAUSE OF ACTION AGAINST DEFENDANT
### (Anticipatory Breach of Contract by Defendant)

168. NielsenIQ restates, re-alleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 167 as though fully set forth herein, and incorporates them by reference herein.

169. The Agreement is a valid and enforceable contract supported by adequate, mutual consideration, including NielsenIQ's payment of nearly $70 million to NPD.

170. As alleged in paragraph 155, NielsenIQ has performed each and every one of its material obligations under the Agreement.

171. NPD intends to merge with IRI, NielsenIQ's direct competitor, █████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████████████████████████████████████

172. ████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████

174. NielsenIQ will be damaged by NPD's breaches of contract in an amount to be determined at trial.

175.     WHEREFORE, NielsenIQ prays for judgment against NPD as set forth more fully below.

## FOURTH CAUSE OF ACTION AGAINST DEFENDANT
### (Breach of Duty of Good Faith and Fair Dealing)

176.     NielsenIQ restates, re-alleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 175 as though fully set forth herein, and incorporates them by reference herein.

177.     The Agreement is a valid and enforceable contract supported by adequate, mutual consideration, ███████████████████████████████████

178.     As alleged in paragraph 155, NielsenIQ has performed each and every one of its material obligations under the Agreement.

179.     █████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████

180.     ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████

████████████████████████

182.     ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

183. ████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

186. ████████████████████████████████████████████████

████████████████████████████████████████████

187.     NielsenIQ has been damaged by NPD's breach of the duty of good faith and fair dealing in an amount to be determined at trial.

188.     WHEREFORE, NielsenIQ prays for judgment against NPD as set forth more fully below.

## FIFTH CAUSE OF ACTION AGAINST DEFENDANT
### (Promissory Estoppel)

189.     NielsenIQ restates, re-alleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 188 as though fully set forth herein, and incorporates them by reference herein.

190. ████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

    ███████████████████████████████████████

██████████████████████████████████

    ██████████████████████████████████████

████████████████████████████████████

194.    ██████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████

195.    NPD is estopped from reneging on this promise to NielsenIQ under the doctrine of promissory estoppel.

196.    NielsenIQ has performed each and every one of its material obligations under the Agreement and remains a willing and good faith licensee.

197.    ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

198.    ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

199.     WHEREFORE, NielsenIQ prays for judgment against Defendant NPD as set forth more fully below.

## SIXTH CAUSE OF ACTION AGAINST DEFENDANT
### (Threatened Trade Secret Misappropriation under the Defend Trade Secrets Act)

200.     NielsenIQ restates, re-alleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 199 as though fully set forth herein, and incorporates them by reference herein.

201.     This is a claim for violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, for the threatened misappropriation of NielsenIQ's trade secrets on and after May 11, 2016.

202.     NielsenIQ owns and possesses certain confidential, proprietary, and trade secret information that Defendant threatens to misappropriate.

203.     ████████████████████████████████████

204. NielsenIQ's Trade Secrets relate to products and services used, sold, and ordered in, or intended to be used, sold, and/or ordered in, interstate or foreign commerce.

205. NielsenIQ's Trade Secrets are of immense value to NielsenIQ's business, are the result of substantial investment of money and effort by NielsenIQ, and form the foundation for NielsenIQ's competitive edge in the consumer data and analytics industry.

206. As part of NielsenIQ's "secret sauce" to making consumer data into comprehensive products, NielsenIQ's Trade Secrets would be of great value to competitors.

207. This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the acquisition, disclosure, or use of the information.

208. Gaining access to how NielsenIQ collects, processes, use, and transform consumer data into its product would provide an immense advantage to competitors.

209. NielsenIQ's Trade Secrets contribute to its continued position of technology leadership and uniquely capable product offering and are extremely difficult to independently or properly acquire or duplicate.

210. NielsenIQ's Trade Secrets are of the nature that any reasonable business in the industry would carefully protect this material from disclosure to a competitor.

211. NielsenIQ has taken reasonable measures to keep such information secret and confidential.

212. ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████

213. ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████

214.     In violation of NielsenIQ's rights, Defendant NPD threatens to misappropriate NielsenIQ's Trade Secrets and confidential information to injure NielsenIQ.

215. ███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

216.     Upon information and belief, Defendant NPD has already disclosed NielsenIQ's Trade Secrets to IRI in advance of the now-binding merger without NielsenIQ's consent.

217. ██████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

218.     Upon information and belief, the combined NPD-IRI entity intends to use NielsenIQ's Trade Secrets and confidential information to compete directly against NielsenIQ in the market for consumer data and analytics.

219.     Use of NielsenIQ's confidential, proprietary and trade secret information will provide significant competitive benefits to NPD and its newly-formed entity with IRI, including

in its development of competing consumer data and analytics products and services, and commercialization efforts for those products and services.

220.    NielsenIQ's Trade Secrets were and are used by NielsenIQ in its business, and will give NPD and its newly formed entity with IRI an opportunity to obtain an advantage over competitors who do not know or use it.

221.    As a result of the aforementioned allegations, NPD will wrongfully convert and misappropriate NielsenIQ's confidential, proprietary and trade secret information, which it will use for its benefit and to the detriment of NielsenIQ.

222.    NPD's aforementioned threatened acts to wrongfully convert and misappropriate NielsenIQ's confidential, proprietary and trade secret information will be intentional, knowing, willful, malicious, fraudulent and oppressive.  The actions constitute threatened misappropriation under the DTSA, 18 U.S.C. § 1839.

223.    As a direct and proximate result of Defendant's actions, NielsenIQ will be greatly damaged and suffer irreparable harm, including through the loss of (i) NielsenIQ's Trade Secrets through disclosure, (ii) NielsenIQ's competitive advantage as a result of its substantial investment in the development of NielsenIQ's Trade Secrets, and (iii) market share, as a result of IRI, a competitor, gaining access to NielsenIQ's Trade Secrets.

224.    If not enjoined by this Court, NPD will benefit from the misappropriation and use of NielsenIQ's Trade Secrets, causing NielsenIQ continued irreparable harm, damage and injury.

225.    NielsenIQ will be damaged by all of the foregoing, and is entitled to its injunctive relief as well as damages, in an amount to be determined at trial, and an award of exemplary damages and attorneys' fees.

226. WHEREFORE, NielsenIQ prays for judgment against NPD as set forth more fully below.

### SEVENTH CAUSE OF ACTION AGAINST DEFENDANT
**(Threatened Trade Secret Misappropriation under New York Common Law)**

227. NielsenIQ restates, re-alleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 226 as though fully set forth herein, and incorporates them by reference herein.

228. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

229. NielsenIQ's trade secret information that was disclosed in confidence to Defendant NPD was and is used by NielsenIQ in its business and gives NPD and its newly-formed business entity with IRI an opportunity to obtain an advantage over competitors who do not know or use it.

230. ████████████████████████████████████████████

███████████████████████████████████████████.

231. NielsenIQ has taken all reasonable measures to guard the secrecy of the information, as set forth above.

232. NielsenIQ's Trade Secrets are not readily ascertainable by proper means, are of immense value to NielsenIQ's business, are the result of substantial investment of money and effort by NielsenIQ, and form the foundation for NielsenIQ's competitive edge in the consumer data and analytics industry.

233. NielsenIQ's Trade Secrets would be of great value to competitors.

234.     As set forth above, NielsenIQ's Trade Secrets enable NielsenIQ's performance and are extremely difficult to independently or properly acquire by proper means or duplicate.

235.     ████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████

236.     NielsenIQ will be damaged, substantially and irreparably, through Defendant NPD's misappropriation of NielsenIQ's Trade Secrets because NielsenIQ will lose (i) NielsenIQ's Trade Secrets through disclosure, (ii) its competitive advantage as a result of its substantial investment in the development of NielsenIQ's Trade Secrets, and (iii) market share, as a result of IRI, a competitor, gaining access to NielsenIQ's Trade Secrets.

237.     WHEREFORE, NielsenIQ prays for judgment against NPD as set forth more fully below.

## EIGHTH CAUSE OF ACTION AGAINST DEFENDANT
### (Unfair Competition)

238.     NielsenIQ restates, re-alleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 237 as though fully set forth herein, and incorporates them by reference herein.

239.     Defendant NPD has engaged in a deliberate scheme to misuse and misappropriate NielsenIQ's significant investments, strategies, intellectual property (including NielsenIQ's

Trade Secrets as well as proprietary and confidential technical information and know-how) and commercial advantages to lay the groundwork for Defendant to betray NielsenIQ, by using and disclosing the fruits of the parties' joint and confidential investments to third parties.

240. As a part of Defendant's scheme, Defendant has abused the parties' confidential relationship and improperly used and now threatens to disclose NielsenIQ's Trade Secrets as well as NielsenIQ's proprietary and confidential technical information and know-how. Defendant has also abused the financial, time and human capital investments made by NielsenIQ pursuant to the parties' confidential relationship.

241. ███████████████████████████████████

████████████████████████████████████████████

██████████

███████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████

244. Now, in agreeing to merge with IRI, Defendant NPD has made clear that it will be directly competing with NielsenIQ.

245. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

██████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████

247. Defendant's misuse of its confidential relationship with NielsenIQ and its misappropriation of NielsenIQ's confidential and trade secret information, investments and resources and other commercial advantages constitutes unfair competition.

248. As a direct and proximate result of Defendant's unfair competition, NielsenIQ will be harmed, and Defendant NPD unjustly enriched – having reaped the rewards of its scheme to benefit from NielsenIQ's financial investments, intellectual property, and other proprietary information without honoring its contractual, confidentiality, and equitable obligations to NielsenIQ.

249. NielsenIQ has suffered, and will continue to suffer, damages to its business, in an amount to be determined at trial.

250. In addition, because Defendant ignored multiple requests by NielsenIQ that NPD abide by the parties' Agreement, Defendant's conduct is willful, wanton and undertaken with a conscious disregard for NielsenIQ's rights, and NielsenIQ should be awarded punitive or exemplary damages, in an amount to be determined at trial.

251.     WHEREFORE, NielsenIQ prays for judgment against NPD as set forth more fully below.

## NINTH CAUSE OF ACTION AGAINST DEFENDANT
### (Unjust Enrichment)

252.     NielsenIQ restates, re-alleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 251 as though fully set forth herein, and incorporates them by reference herein.

253.     In the alternative, should no valid and enforceable contract exists between the parties, Defendant NPD has been unjustly enriched by its procurement of NielsenIQ's significant financial and other investments and confidential and trade secret information under false pretenses and with intent to use those investments and that information to NielsenIQ's detriment and to negatively affect NielsenIQ's competitive position in the markets for consumer data and analytics.

254.     Defendant NPD has substantially benefitted from NielsenIQ's investment and procurement of and exposure to NielsenIQ's confidential information and trade secrets, and this benefit has been procured at NielsenIQ's expense.  Equity and good conscience require restitution.

255.     WHEREFORE, NielsenIQ prays for judgment against NPD as set forth more fully below.

## TENTH CAUSE OF ACTION AGAINST DEFENDANT
### (Conversion)

256.     NielsenIQ restates, re-alleges, and incorporates by reference each and every allegation set forth in paragraphs 1 through 255 as though fully set forth herein, and incorporates them by reference herein.

257. ████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

█████████████████████

258.     Because Defendant NPD wrongfully took and maintains possession of NielsenIQ's Trade Secrets and confidential and proprietary information to use in a competing business, Defendant NPD has converted NielsenIQ's Trade Secrets and confidential and proprietary information.

259.     As a consequence of the foregoing, NielsenIQ has suffered and will continue to suffer irreparable harm, including the loss of (i) NielsenIQ's Trade Secrets through disclosure, (ii) its competitive advantage as a result of its substantial investment in the development of NielsenIQ's Trade Secrets, and (iii) market share, as a result of IRI, a competitor, gaining access to such trade secrets, unless Defendant is enjoined from disclosing or possessing NielsenIQ's Trade Secrets and confidential and proprietary information.

260.     WHEREFORE, NielsenIQ prays for judgment against NPD as set forth more fully below.

## PRAYER FOR RELIEF

WHEREFORE, NielsenIQ prays for relief and judgment as follows:

(a)     For an order preliminarily and permanently enjoining NPD, its officers, agents, servants, employees, attorneys, and affiliated companies, its assigns and successors in interest, and all persons in active concert or participation with it from using, sharing, transferring, or licensing the ████████████ or disclosing NielsenIQ intellectual property and confidential information in violation of the Agreement.

(b)     For a judgment declaring that:

1.     ████████████████████████████████████
████████████████████

2.     ████████████████████████████████████
██████████████████████████████
████████████████

3.     ██████████████████████████████████
██████████████████████████████████
████████████

4.     NPD has willfully and maliciously misappropriated NielsenIQ's Trade Secrets and confidential information.

(c)     For an entry of judgment holding NPD liable for anticipatory breach of contract, misappropriation of trade secrets, conversion of confidential information, breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, and unfair competition;

(d)     For an order awarding NielsenIQ money damages, compensatory damages, actual damages, and/or profits, according to proof, resulting from Defendant NPD's anticipatory

breach, misappropriation of NielsenIQ's Trade Secrets, conversion of NielsenIQ's confidential information, breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, and unfair competition;

(e) ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

██████████████████████

(f)      For an order awarding NielsenIQ its costs and attorneys' fees;

(g)      For an award of compensatory damages, exemplary damages, punitive damages, and pre-judgment interest at a legal rate through the date of the judgment; and

(h)      For any and all other legal and equitable relief as may be available under law and that the Court may deem proper.

## <u>DEMAND FOR A JURY TRIAL</u>

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiff NielsenIQ demands a trial by jury of all issues so triable.

Dated: April 15, 2022

New York, NY

WHITE & CASE LLP

By: _____

Joshua A. Berman
John P. Padro
Matthew R. Wisnieff
Laura Logsdon
1221 Avenue of the Americas
New York, N.Y. 10020
T: (212) 819-8200
joshua.berman@whitecase.com
john.padro@whitecase.com
matthew.wisnieff@whitecase.com
laura.logsdon@whitecase.com

*Attorneys for Plaintiff*
*Nielsen Consumer LLC d/b/a*
*NielsenIQ*