UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NIELSEN CONSUMER LLC,

                              Plaintiff,

            -v-

CIRCANA GROUP, L.P.,

                              Defendant.

22-CV-3235 (JPO)

**REDACTED**

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Before the Court is Defendant Circana Group, L.P.'s ("Circana") motion to dissolve the

preliminary injunctions set forth at Docket Numbers 137 and 281. For the reasons that follow,

the motion to dissolve is granted as to Paragraphs 1 and 3 of the injunction set forth at Docket

Number 137 and the entirety of the injunction set forth at Docket Number 281, and otherwise

denied.

I.      **Background**

        A.      **Factual Background**

        The Court assumes familiarity with the facts underlying this dispute as set out in its

Findings of Fact and Conclusions of Law on Motion for Preliminary Injunction (the "Preliminary

Injunction Order"). (ECF No. 137 ("Prelim. Inj. Or.").)

        Nielsen Consumer LLC d/b/a NielsenIQ ("NIQ") is a market research firm that provides

data analytics services to manufacturers and retailers to help them understand relevant consumer

behavior. [1] (*Id.* at 2.) NIQ licenses information about market sales and consumer behavior to

retailers and manufacturers of consumer packaged goods ("CPGs"), which are goods that

_____

        [1] Because NielsenIQ has begun to do business as NIQ and refers to itself as "NIQ" in its
latest briefing, the Court does the same.

consumers frequently use and replenish.  (*Id.*)  In 2018, NIQ entered into a "Data and Intellectual Property License Agreement" (the "Agreement") with the NPD Group, Inc. ("NPD"), a market research firm that owns a mobile application called ReceiptPal, through which NPD collects receipts and other information from a consumer panel and licenses that information to end users. (*Id.* at 2, 4; ECF No. 37-10 ("Agmt.") at 17.)  NPD's strategy had been to focus on selling the two main industry sectors of consumer data besides CPG: the general merchandise sector and the food service sector.  (Prelim. Inj. Or. At 2-3.)  As discussed below, the underlying action arises from the eventual creation of Defendant Circana through NPD's merger with Information Resources, Inc. ("IRI"), NIQ's biggest competitor in the CPG sector.  (*Id.* at 3, 7.)

Under the terms of the Agreement, "



" (Agmt. § 1.1.)  In turn, § 1.2 provides that "

"

. (*Id.* § 1.2.)  Importantly for present purposes, the section goes on to provide that

(*Id.*)

Section 1.5 of the Agreement ████████████████████████████████

████████████████████████████████████████████████████████████

████████. It provides that "████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████" (*Id.* § 1.5.) Likewise, § 1.5 also

provides that ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ (*Id.*)

The Agreement is clear that, ████████████████████████████████

████████████████████████████████████████████████████████

████████. (*Id.* § 6.1.) Confidential information disclosed pursuant to the Agreement, ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ (*Id.*

§§ 7.1, 7.2.) ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████ (*Id.* § 7.4.) ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████. (*Id.* § 7.3)

As for termination, the Agreement provides that it shall ████████████████

████████████████████████████████████████████████████████

████████ (*Id.* § 4.1.) If NIQ sought to terminate the contract at the end of Contract Year 1,

NPD would have been required " ████████████████████████████████

████████████████████████████████████ " (*Id.* § 4.2.) If NIQ terminated

the Agreement at the end of Contract Years 2, 3, or 4, " ████████████████████

████████████████████████████████████████████ " (*Id.*)

The Agreement allows for termination by either party if the other ████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████ " (*Id.*) Upon termination, the Agreement provides that ████████████

████████████████████████████████████████████

████████████████████████████████ (*Id.* § 4.3.)

████████████████████████ (*Id.*)

NIQ did not terminate the Agreement in Contract Years 1, 2, 3, or 4. Instead, the

Agreement was still in effect in April of 2022, when NPD announced its merger with NIQ's

rival, IRI. (Prelim. Inj. Or. at 3, 7.) Prior to the merger, IRI had acquired an application called

CoinOut which, like ReceiptPal, collects receipt and other consumer information from a panel.

(ECF No. 35 ¶ 26.)

B.    **Procedural Background**

Shortly after the announcement of the merger, NIQ filed a complaint and a motion for

preliminary injunction, the latter of which asked the Court to enjoin Circana from "(1)

completing its merger with IRI until adequate assurances are provided that [NIQ's] exclusive

CPG Licensed Data will not be used by any third parties without [NIQ's] express, written

consent, and (2) using or disclosing [NIQ's] exclusive confidential information and trade secrets

without [NIQ's] express, written consent." (Prelim. Inj. Or. at 8 (quotation marks omitted).)

This Court largely denied the motion but granted limited relief in the form of the following restrictions, which Circana had voluntarily agreed to prior to entry of the injunction:

> 1. NPD shall provide NielsenIQ exclusivity with respect to CPG data from ReceiptPal, meaning that NPD shall not use such data to compete with NielsenIQ or license such data. For the avoidance of doubt, such exclusivity shall include CPG data from the ReceiptPal Reserve Panelists (i.e., those in excess of the roughly 100,000 for whom data is being provided to NielsenIQ) and will exclude the Overlap Categories as defined in Appendix A, § 2(c) of the Agreement.
>
> 2. NPD shall restrict access for anyone other than Restricted Persons (defined as those individuals with a need to know the relevant information to service operations relating to ReceiptPal for NielsenIQ) to all information added by NielsenIQ available on Sharepoint and Trello shared resource systems. NielsenIQ shall be able to control any contributions of additional information to those systems, and it may designate that any such information shall be limited only to Restricted Persons.
>
> 3. NPD shall restrict access to CPG data from ReceiptPal so that, except with respect to the Overlap Categories as defined in Appendix A, § 2(c), it is accessible only to Restricted Persons.
>
> 4. To the extent that NielsenIQ identifies any specific information delivered to NPD that is a NielsenIQ trade secret, NPD shall secure and shall not use that information. Specifically, NPD shall secure and shall not use the contents of NielsenIQ's ████████████████████████ (*Id.* at 20-21.)

In late 2023, Circana promoted CoinOut to active users of ReceiptPal, and NIQ sought another preliminary injunction. (ECF No. 236.) On January 22, 2024, this Court adopted the following restriction in a so-ordered stipulation filed by the parties (the "So-Ordered Stipulation"): "[D]uring the pendency of the litigation, Circana, or any of its affiliates, will not market, or support any other entity in the marketing of, the CoinOut application directly to ReceiptPal panelists, including by email promotion or advertising on the ReceiptPal application." (ECF No. 281 at 2.)

On September 3, 2025, Circana moved to dissolve the injunctions set forth in the Preliminary Injunction Order and the So-Ordered Stipulation. (ECF No. 598). Circana filed a

memorandum in support (ECF No. 600), NIQ filed an opposition (ECF No. 624), and Circana

filed a reply (ECF No. 631).

## II.    Legal Standard

"The power of a district court to modify its past injunctive decrees in order to

accommodate changed circumstances is well established." *Ass'n Against Discrimination in*

*Emp., Inc. v. City of Bridgeport*, 710 F.2d 69, 74 (2d Cir. 1983).  "[T]hat authority extends to

injunctions entered on consent of the parties." *Benjamin v. Jacobson*, 172 F.3d 144, 162 (2d Cir.

1999).

"For preliminary injunctions, the decision whether to modify or dissolve the order

'involves an exercise of the same discretion that a court employs in an initial decision to grant or

deny a preliminary injunction,' and that 'discretion is measured by whether the requested

modification effectuates or thwarts the purpose behind the injunction.'" *Biediger v. Quinnipiac*

*Univ.*, 928 F. Supp. 2d 414, 433 (D. Conn. 2013) (citations omitted) (first quoting *Weight*

*Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 141 (2d Cir. 2005), then quoting *Sierra*

*Club v. U.S. Army Corps of Eng'rs*, 732 F.2d 253, 257 (2d Cir. 1984)).  Accordingly, a

preliminary injunction may be modified or dissolved "if the moving party demonstrates that a

material change in circumstances justifies the alteration," but "only when the changed

circumstances demonstrate that continuance of the injunction is no longer justified and/or will

work oppressively against the enjoined parties." *Int'l Equity Invs., Inc. v. Opportunity Equity*

*Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006) (cleaned up).  This analysis "generally

does not require the relitigation of the original injunctive order or the issues already resolved in

consideration of the original order."  42 Am. Jur. 2d Injunctions § 288 (footnotes omitted).

### III.    Discussion

### A.    Preliminary Injunction Order

Circana argues that two changes in circumstances independently warrant the dissolution of each requirement set forth in the Preliminary Injunction Order.  First, Circana alleges that either NIQ has already terminated the Agreement or that the Agreement will terminate on ██████████████████ (ECF No. 600 at 10-11.)  As provided for in an amendment to the Agreement, ████████████████████████████████████████████████ ████████████████████████████ after that, ████████████████████████████████ ██████████████████████████████ (ECF No. 572-2 § 7(a).)  Pursuant to this provision, and upon the agreement of both parties, Circana provided notice on January 1, 2024, such that the Agreement terminates on ███████████████ (ECF No. 602-4 at 2.)  Separately, NIQ purported to terminate the Agreement on July 31, 2025, pursuant to the provision in the Agreement that permitted ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ (ECF No. 602-5; Agmt. § 4.2.)  Neither party asks this Court to resolve whether the Agreement terminated on July 31, 2025 in this motion[2]—instead, Circana requests dissolution of the injunctions "on or before December 31, 2025."  (ECF No. 600 at 7.)  Accordingly, without passing judgment on whether the Agreement has already been terminated, the Court's analysis will proceed under the assumption that the Agreement will be terminated by ████████████████████████

Second, Circana argues that changed circumstances warrant the dissolution of the injunctions

---

[2]  After the instant motion was fully briefed, Circana filed a separate letter motion seeking leave to supplement its counterclaims to add claims for breach of contract and anticipatory breach of contract as related to NIQ's purported termination.  (ECF No. 637.)

because "discovery has demonstrated that the bases upon which the requirements and restrictions were entered are false." (ECF No. 600 at 11.)

Circana argues that these changed circumstances warrant dissolution of the injunctive relief imposed in the Preliminary Injunction Order. That relief can be broken up into two categories: those restrictions protecting NIQ's exclusivity rights over the CPG data, and those restrictions protecting NIQ's confidential information. The Court considers each in turn.

### 1.    Paragraphs 1 and 3

Two requirements in the Preliminary Injunction Order pertain to NIQ's exclusivity interest. Paragraph 1 of the Preliminary Injunction Order requires Circana to "provide [to NIQ] exclusivity with respect to CPG data from ReceiptPal, meaning that [Circana] shall not use such data to compete with [NIQ] or licenses such data." (Prelim. Inj. Or. at 20.) This requirement includes CPG data from ReceiptPal "Reserve Panelists," or "those in excess of the roughly 100,000 for whom data is being provided to [NIQ]," but it "exclude[s] the Overlap Categories as defined in Appendix A, § 2(c) of the Agreement." (*Id.*) Paragraph 3 of the Preliminary Injunction Order requires Circana to "restrict access to CPG data from ReceiptPal so that, except with respect to the Overlap Categories as defined in Appendix A, § 2(c), it is accessible only to Restricted Persons." (*Id.* at 21.)

This Court based these restrictions on § 1.2 of the Agreement. (*See* Prelim. Inj. Or. at 14-15.) That provision grants to NIQ an "███████    ████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████" (Agmt. § 1.2.) On the instant motion, the parties dispute whether § 1.2 should be read ██████████████████████████████

██████. Circana argues that, because § 1.2 requires only that Circana shall not, "██████

████████████████████████████████████████████████████" (*id.*

████████████████████████████████████████████████████████

████████████████████████████████████████. (ECF No. 600 at 13-15.)  NIQ

disagrees, urging that NIQ's exclusivity rights survive termination of the Agreement.

Circana has the better of the arguments.  On the face of the Agreement, § 1.2 ████

████████████████████████████████. (Agmt. § 1.2.)  Under New

York law, which governs the interpretation of the Agreement (*id.* § 13.6), "[t]he Court must

interpret unambiguous contractual provisions in light of 'their plain and ordinary meaning.'"

*Philadelphia Indem. Ins. Co. v. Streb, Inc.*, 487 F. Supp. 3d 174, 184 (S.D.N.Y. 2020) (quoting

*10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir.

2011)).  Here, it would take a strained reading of the ████████ in § 1.2 to conclude

that it ████████████████████

NIQ argues for a contrary interpretation by relying on other portions of § 1.2 and the

Agreement.  These arguments are unavailing.  First, NIQ relies on the fact that it was granted an

████████████████████████████████████████████████

████████████████████████████████████████." (ECF

No. 624 at 18-19 (quoting Agmt. §§ 1.2, 4.3).)  It is true that NIQ has "████████████

████████████████████████████████████" (Agmt.

§ 1.2.)  The fact that ████████████████████████

████████████████████████████████████████

████. Indeed, § 4.3 of the Agreement states ████████████████████

███████████████████████████████████████████████████████████████

██ (*Id.* § 4.3.)

Second, NIQ argues that another provision of the Agreement regarding ███████████

would be rendered superfluous under Circana's reading of § 1.2. (ECF No. 624 at 19-20.) That

section provides that, ████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████" and that if NIQ terminates the Agreement at the end of

Contract Years 2, 3, or 4, Circana will "████████████████████████████████████

████████████████████████████" (Agmt. § 4.2.) NIQ contends that this provision

implies that ███████████████████████████████████████████████████████

█████████████████████████████. (ECF No. 624 at 19.) But reading the provision

as a whole makes obvious that § 4.2 merely served to ███████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████.[3] In any event, § 4.2 addresses only "██████

███████████████████████████████████████████████████████████████

██████████████████████████████. (Agmt. § 4.2.)

The parties will have the opportunity to fully resolve this question at summary judgment,

but at this juncture, the Court concludes that the Agreement does not seem to contemplate

███████████████████████████████████████. Because the plain text of the

Agreement does not support imposing such obligations on Circana ████████████, the

requirements set out in Paragraphs 1 and 3 of the Preliminary Injunction Order are not justified

---

[3] ████████████████████████████████████████████████████████████████

████████████████████████████████████████████ (*See* Agmt. § 4.1.)

beyond the term of the Agreement. Accordingly, the Court grants Circana's motion to dissolve the injunction as to Paragraphs 1 and 3 of the Preliminary Injunction Order, effective end of day on December 31, 2025.

        **2.**        **Paragraphs 2 and 4**

        The remaining two requirements set out in the Preliminary Injunction Order pertain to NIQ's interest in its confidential information. Paragraph 2 requires Circana to "restrict access for anyone other than Restricted Persons (defined as those individuals with a need to know the relevant information to service operations relating to ReceiptPal for [NIQ]) to all information added by [NIQ] available on Sharepoint and Trello shared resource systems." (Prelim. Inj. Or. at 21.) It further provides that NIQ "shall be able to control any contributions of additional information to those systems, and it may designate that any such information shall be limited only to Restricted Persons." Relatedly, Paragraph 4 provides that, "[t]o the extent that [NIQ] identifies any specific information delivered to [Circana] that is a [NIQ] trade secret, [Circana] shall secure and shall not use that information. Specifically, [Circana] shall secure and shall not use the contents of [NIQ's] ███████████████████████████████ ███████████████████████ " (*Id.*) This Court concluded that these requirements would sufficiently guard against any irreparable harm to NIQ "with respect to specific instances of proprietary [NIQ] information that [Circana] may possess independently of the 'reverse engineering' theory." (*Id.* at 15.)

        Section 7.2 of the Agreement ████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████ (Agmt. § 7.2.) Likewise, ████████████████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████

███████████████████████████████████████████████████ *(Id.* § 7.4.)

███████████████████████████████████ *(Id.* § 4.3.)

Circana argues that Paragraphs 2 and 4 should be dissolved because discovery shows that it has not used and has not threatened to use any of NIQ's ████████████████████████ ██████████████████████████████████ the categories of confidential information specifically enumerated in Paragraph 4. (ECF No. 600 at 15-22.) This argument relies in part on Circana's contention that NIQ has not actually provided any confidential information falling within those categories. (*See id.*) NIQ hotly contests this gloss on the information produced in discovery, arguing that discovery shows Circana actually *has* misappropriated NIQ's trade secrets. (ECF No. 624 at 24-27.)

Circana has not met its burden of showing that a dissolution of the injunction is warranted. Its arguments in favor of dissolving Paragraphs 2 and 4 rely on a hotly disputed discovery record and amount to a claim that discovery has not borne out the allegations NIQ makes in its complaint. When a movant's "position on this motion [to dissolve] is not that the underlying facts and circumstances have changed, but that there is now available sufficient information to challenge" the plaintiff's position, such arguments "go to the merits of the plaintiff's . . . claim[]" and are not appropriate in arguing for modification of an existing preliminary injunction. *Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd.*, 74 F.R.D. 621, 623 (S.D.N.Y. 1977). "The Second Circuit has expressly disapproved of the practice of 'trying to relitigate on a fuller record preliminary injunction issues already decided.'" *JLM Couture, Inc. v. Gutman*, No. 20-CV-10575, 2021 WL 2227205, at *3 (S.D.N.Y. June 2, 2021) (quoting *American Optical Co. v. Rayex Corp.*, 394 F.2d 155, 155 (2d Cir. 1968), *cert. denied*, 393 U.S. 835 (1968)). "To permit a party to withhold its objections to a preliminary injunction until such

time as it can present the strongest possible case and allow it to then obtain a dissolution of the injunction would be judicially unwise," as "[t]his is precisely the sort of situation accommodated by the distinction between emergency or temporary and permanent relief." *Huk-A-Poo Sportswear, Inc.*, 74 F.R.D. at 624.

The question of whether NIQ has in fact shared trade secrets with Circana, and whether Circana has used or threatened to use those secrets, is best resolved at summary judgment or at trial. At this juncture, Circana has failed to show that changed circumstances merit dissolution of the confidentiality obligations set out in the Preliminary Injunction Order. Accordingly, the Court denies Circana's motion to dissolve the injunction as to Paragraphs 2 and 4 of the Preliminary Injunction Order.

### B.    So-Ordered Stipulation

The So-Ordered Stipulation prohibits Circana from marketing CoinOut to ReceiptPal panelists. (ECF No. 281 at 2.) Both parties agree that the injunction set forth in the So-Ordered Stipulation should be dissolved. (ECF No. 600 at 23-25; ECF No. 624 at 30.) Accordingly, and because the Court concludes that termination of the Agreement justifies dissolution of the So-Ordered Stipulation, Circana's motion to dissolve the injunction set forth in the So-Ordered Stipulation is granted, effective end of day December 31, 2025.

## IV.    Conclusion

For the foregoing reasons, Circana's motion to dissolve the injunctions is GRANTED as to Paragraphs 1 and 3 of the injunction set out in Docket Number 137 and GRANTED as to the injunction set out in Docket Number 236, effective end of day December 31, 2025. Circana's motion is otherwise DENIED.

The parties are directed to confer and submit jointly proposed redactions to this opinion and order within 21 days.

The Clerk of Court is directed to close the motion at Docket Number 598.

The Clerk of Court is also directed to file this opinion and order UNDER SEAL—

PARTY VIEW ONLY.

SO ORDERED.

Dated:  December 22, 2025
        New York, New York

*Redactions approved and so
ordered: January 21, 2026.*

The Clerk of Court is
directed to close the motion
at Docket Number 683.

J. PAUL OETKEN
United States District Judge