UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NIELSEN CONSUMER LLC,
                    Plaintiff,

          -v-

CIRCANA GROUP, L.P.,
                    Defendant.

22-CV-3235 (JPO)
**REDACTED**
OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Defendant Circana Group, L.P. ("Circana") moves to dismiss the Fifth Amended Complaint (the "Complaint") filed by Plaintiff Nielsen Consumer LLC ("NIQ").  For the reasons that follow, the motion is denied.

## I.    Background

The following factual allegations are taken from the Complaint and presumed true for the purpose of resolving Circana's motion to dismiss.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 740-41 (2d Cir. 2013).  The Court assumes familiarity with the facts underlying this dispute, which have been extensively recounted in this Court's previous orders.

NIQ collects and licenses market sales and consumer information to retailers and manufacturers of consumer packaged goods ("CPGs"), which are goods, such as groceries, that consumers frequently use and replenish.  (ECF No. 572 ("Compl.") ¶ 19.)  NPD, which would later merge with a direct competitor of NIQ, Information Resources Inc. ("IRI"), to form Circana, was a market research company that collected and licensed market sales and consumer information through ReceiptPal, a mobile application through which users upload receipts of their purchases.  (*Id.* ¶¶ 6, 33.)

1

In January 2018, NIQ and NPD entered into the "Data and Intellectual Property License Agreement" (the "Agreement"). (*Id.* ¶¶ 40-42; *see also* ECF No. 572-1 ("Agmt.").) As relevant here, the Agreement █████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████. (*Id.* ¶ 70; Agmt. § 1.2, App'x A § 2(a).) Appendix A to the Agreement provides that █████████████████████████████████████████████████████████ ██████████████████████████████████. (Compl. ¶ 70; Agmt. App'x A § 2(a).) "██████ ██████" is not defined elsewhere in the Agreement, but according to the Complaint, ███████ ████████████████████████████████████████████████████████████████████ ███████████████ (Compl. ¶ 74.) Pursuant to this understanding, NIQ has included ████████████████████████████████████ (*Id.* ¶¶ 75, 81.) After NPD merged with IRI, the then-formed Circana began to claim that ████████████████████ ██████████████████████████. (*Id.* ¶ 82.) NIQ has since discovered that Circana is reporting both ███████████████████████████ from ReceiptPal. (*Id.* ¶¶ 85-87.)

Appendix B to the Agreement, titled "Service Level Agreement," sets out further obligations. Circana agreed to provide data to NIQ consisting of ████████████████ ████████████████████████████████████ such as "██████████" and "██████████." (Agmt. App'x A § 3.) The Service Level Agreement defines certain service level commitments which Circana is required to meet or exceed with respect to the licensed data. (Agmt. App'x B ("SLA") § 3(a); SLA Attachment 2.) For example, certain information like "██████████" and "██████████" is █████████████████████████████████████ (SLA Attachment 2A.) ████████ ████████████████████████████████████████████████████████████████████████ ███████████ (SLA § 3(a).) And for elements of the ████████████████████████████

2



(*Id.* § 3.a.3.1.) In the event of a ███████████████████ or a ██████████ ████████████████████████████████████████████. (*Id.* §§ 3.a.3.1, 3.a.3.2; *see also* Compl. ¶¶ 100, 280-82.) Circana is also required to ████████ ███████████████████████████████████████████████████████ ████████████████████ (SLA § 3.a.2.1.) The Service Level Agreement ████████████████████████████████████████████████████ ██████████. (*Id.* § 4(b).)

In May 2023, after the merger with IRI, Circana informed NIQ that it was ███████ ████████████████████████████████████████ that it then used in ReceiptPal. (Compl. ¶ 245.) In response to questions from NIQ, Circana "falsely informed [NIQ] that ████████████████████████████████████ ████████████████████████." (*Id.* ¶ 249.) But when Circana provided NIQ with a ██████████, NIQ realized that Circana had made ███████████ ████████████ "██████████" and "█████████" ████ (*Id.* ¶ 258.)

Problems soon arose. Prior to the change in ████████████, Circana provided its ███████████████████████████████████████ ██████. (*Id.* ¶ 283.) After the ██████████, however, Circana provided ██████████ that omitted ███████████ in both ███████████████, for which an ██████████ ████████████. (*Id.* ¶¶ 285-86.) In an October 9, 2023 email, Circana's Chief Legal Officer, Susan Bennett, purported to provide a PowerPoint presentation showing that Circana was ████████████ below the ████████████████████████, ███ and ██████████ (*Id.* ¶ 287.) When NIQ raised concerns about ████████████, Circana

replied that its  (*Id.* ¶ 289 (alteration adopted).) Circana distributed billing invoices to NIQ in 2023 and 2024 without applying any ███████████, leading NIQ to believe that Circana was ████████████████████. (*Id.* ¶ 288.)

NIQ learned of the discrepancies on October 16, 2024, when a new Circana employee provided an August 2024 ████████ that, unlike the █████ provided to NIQ over the past year, included ████████████████████████ for every month since June 2023. (*Id.* ¶ 293.) This data showed that Circana failed to ████████████ ████████████████ in every month from August 2023 to August 2024. (*Id.* ¶¶ 293-94.) It also showed that Circana failed to ██████████████████████████ ███████████. (*Id.* ¶ 295.)

On December 19, 2024, NIQ sought leave to file a fourth amended complaint adding the two causes of action in dispute here: the seventh cause of action, breach of contract regarding Circana's reporting of █████████████████████, and the eleventh cause of action, fraudulent concealment as to Circana's ████████████. (ECF No. 423; ECF No. 423-1.) Circana opposed. (ECF No. 426.) In a text order, this Court granted NIQ's motion and NIQ filed the fourth amended complaint on the docket. (ECF No. 443; ECF No. 448.) Circana then moved to dismiss the complaint, filing an accompanying memorandum of law in support. (ECF No. 455; ECF No. 456 ("Mem.").) NIQ opposed (ECF No. 465 ("Opp.")), and Circana filed a reply in further support (ECF No. 484 ("Reply")). NIQ then sought leave to file its fifth amended complaint, amending claims not at issue here, and Circana consented. (ECF No. 566.) Accordingly, the Court granted NIQ's request for leave to file the Complaint at issue here and

accepted the parties' request to treat the motion to dismiss the fourth amended complaint and attendant briefing as a motion to dismiss the fifth amended complaint. (ECF No. 569.)

## II.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). "When there are well-pleaded factual allegations, a court should assume their veracity and *then* determine whether they plausibly give rise to an entitlement to relief." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). All reasonable inferences that can be drawn from the complaint must be construed in the light most favorable to the plaintiff. *See Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

In deciding a motion to dismiss for failure to state a claim, courts may "consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco*, 622 F.3d at 111. "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint." *Id.* (quotation marks omitted).

5

### III.    Discussion

#### A.    Fraud

Both parties agree that New York law governs NIQ's fraud claim. (Mem. at 10; Opp. at 12.) "[S]uch implied consent is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (cleaned up); *see also Hindsight Sols., LLC v. Citigroup Inc.*, 53 F. Supp. 3d 747, 771 (S.D.N.Y. 2014). Under New York law, pleading a fraud claim requires showing "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). Pleading fraudulent concealment "requires additionally setting forth that the defendant had a duty to disclose material information." *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 326 (1st Dep't 1996) (citing *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995)). Moreover, "a claim for fraud is subject to the particularity requirements of Federal Rule of Civil Procedure 9(b)." *Robinson v. MSG Ent. Grp., LLC*, No. 23-CV-9366, 2025 WL 1883597, at *4 (S.D.N.Y. July 8, 2025). Pursuant to these heightened standards, a fraud claim must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (quotation marks omitted).

The Complaint alleges that Circana's ████████ from August 2023 to August 2024 omitted ████████████ in both ███████████████████████████ ████████████████. (Compl. ¶¶ 283-87, 296.) NIQ alleges that Circana "delet[ed] the relevant ████████ in the ███████ and . . . falsely inform[ed] or le[d] [NIQ] to believe

that Circana had ███████████████████," even though Circana possessed ███████ all along and knew it failed to ███████████████. (*Id.* ¶ 437-38.) Likewise, NIQ alleges that Circana omitted the applicable █████████████████████ from the █████ it submitted. (*Id.* ¶¶ 288, 439.) NIQ further alleges that Circana made false representations about the withheld █████ including in the October 19, 2023 email from Bennett.[1] (*Id.*)

These allegations plead that Circana fraudulently omitted or misrepresented facts with sufficient particularity as to the statement or omission, the speaker, the time and place where the statements were made, and why they were fraudulent. *See Eternity Glob. Master Fund Ltd.*, 375 F.3d at 187. The parties dispute the admissibility of the Bennett email and the attached PowerPoint. (*See* Mem. at 12-14; Opp. at 22-24.) The Court can consider these documents because they are attached to the complaint or incorporated by reference. *DiFolco*, 622 F.3d at 111. Moreover, NIQ plausibly alleges with sufficient particularity that Circana made other material omissions, namely in the ███████ from August 2023 to August 2024 and in the ███████████, such that any defects in the Bennett allegations would not be fatal to NIQ's fraudulent concealment claim. In any event, the Court need not resolve Circana's admissibility argument because "the admissibility of documents incorporated in the complaint is irrelevant at the dismissal stage." *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 540 (S.D.N.Y. 2016) (Nathan, J.) (quotation marks omitted); *see also Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991) ("The fact that a pleading contains references to documents that may eventually be ruled inadmissible in evidence is not a proper basis for dismissal.").

---

[1] The Complaint does not distinguish between these misrepresentations and the omissions in the ███████ and █████ but under New York law, the misrepresentations would be treated as fraudulent misrepresentations rather than fraudulent concealment.

Circana's challenge to the substance of the Bennett email and PowerPoint also fails. Circana argues that the PowerPoint defeats any allegation that Bennett fraudulently misrepresented ███████████ because the slides admit that Circana was reporting at ███████ below the ███████████████, ██ and ██████████████ (Mem. at 13.) But NIQ's allegation is that *other* categories besides ███ and "███████████" were performing under ███████████, and for these ████████ the PowerPoint claimed performance at or above ███████████. (ECF No. 572-5 at 6-7.) Thus, NIQ has plausibly alleged that the PowerPoint misrepresented Circana's ███████████.

Furthermore, NIQ sufficiently alleges that Circana knew the falsity of its statements and omissions with an intent to defraud, the latter of which "may be established . . . by alleging facts to show that defendants had both motive and opportunity to commit fraud." *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 187 (quotation marks omitted). As NIQ alleges in the Complaint, Circana always had the ███████████████ in its possession, had motive to conceal its ███████████████ to avoid ███████ NIQ the ███████████, and had opportunity to conceal such ███████ by withholding that information in the ███████████. (Compl. ¶¶ 284-88, 290-96, 439.)

NIQ has also alleged with sufficient particularity that it "reasonably relied on Circana's representations that it met the ████████████████████████████." (Compl. ¶ 436.) Circana argues that a party cannot reasonably rely on alleged misrepresentations about information to which it is entitled and which it knows has been withheld. (Mem. at 24.) But Circana relies on New York cases concerning an alleged breach of fiduciary duty, in which the plaintiff had granted a general release to defendants that encompassed fraud claims. (*Id.* (citing *Centro Empresarial Cempresa S.A. v. Am. Movil, S.A.B. de C.V.*, 17 N.Y.3d 269 (2011) and

8

*Pappas v. Tzolis*, 20 N.Y.3d 228 (2012)).) No such facts are present here. Rather, the Complaint alleges with particularity that NIQ relied on the representations in the ▮▮▮▮▮ and ▮▮▮▮ ▮▮▮▮, which together represented that NIQ was not entitled to certain ▮▮▮▮▮▮▮ ▮▮▮▮. (Compl. ¶¶ 436-37, 440.) The emails between Bennett and NIQ's Chief Legal officer, John Blenke, also indicate that NIQ sought further information from Circana as to whether Circana's ▮▮▮▮▮▮▮▮▮▮▮▮. (ECF No. 457-1 at 6.) At the motion to dismiss stage, when "the question of what constitutes reasonable reliance is not generally a question to be resolved," allegations of such inquiries satisfy the requirement of "a heightened degree of diligence" "when the party to whom a misrepresentation is made has hints of its falsity." *ACA Fin. Guar. Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 1043, 1044-45 (2015) (quotation marks omitted) (finding that plaintiff sufficiently alleged justifiable reliance at the pleading stage by alleging that it emailed defendant seeking assurances).

Circana further challenges NIQ's fraudulent concealment claim as duplicative of NIQ's breach of contract claim brought under the Complaint's fourth cause of action. This argument overlaps in part with the fifth element of a fraudulent concealment claim: whether Circana had a duty to disclose material information. *See Swersky*, 219 A.D.2d at 326. Circana argues that any duty to disclose arose from the Agreement. (Mem. at 16.) It also argues that it had no duty, under the Agreement or otherwise, to ▮▮▮▮▮▮▮▮▮▮. (*Id.* at 18.)

"Generally, to recover damages for a tort, such as fraud, in a contract action, plaintiff needs to plead and prove a breach of duty distinct from, or in addition to, the breach of contract." *Xeriant, Inc. v. XTI Aircraft Co.*, 762 F. Supp. 3d 345, 353 (S.D.N.Y. 2025) (quotation marks omitted) (quoting *GoSmile, Inc. v. Levine*, 915 N.Y.S.2d 521, 524 (1st Dep't 2010)). "To maintain an action of fraud arising from a contractual relationship, 'a plaintiff must either: (i)

9

demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.'" *Id.* at 353-54 (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)). "Where a fraud claim satisfies one of the *Bridgestone/Firestone* scenarios, there is no need to address the other ones." *Id.* at 354 (quotation marks omitted). A non-contractual legal duty arises "where: (1) one party has superior knowledge of certain information; (2) that information is not readily available to the other party; and (3) the first party knows that the second party is acting on the basis of mistaken knowledge." *Banque Arabe*, 57 F.3d at 155.

At least one source of Circana's duty to disclose is the Agreement, which obligates Circana to ███████████████████████████████████████████████████ ████████████████████████████████████████. (SLA § 3.a.2.1.) Thus, at least as to the omissions in the ████████, NIQ has shown a legal duty to disclose, although it is admittedly not independent of any contractual duty.

As to Circana's argument that it had no duty to disclose ████████████ in the ███████ dismissal of claims arising from those omissions would be premature at this juncture. The Agreement provides that, ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████" without addressing whether Circana had to ████████████████ ████████████████████████. (SLA §§ 3.a.3.1, 3.a.3.2.). Circana urges that this ██████ ██████████ does not impose any obligation to ████████████████████, while NIQ in turn argues that such a duty is implied by this provision and the whole of the Agreement, as NIQ must know about its ████████████ before it can ████████████████. (Mem. at 18-19;

Opp. at 24.) Indeed, the Agreement elsewhere requires Circana to ███████████████████ (SLA § 3.a.2.1), which in turn result in ██████ Circana's omission of ███████████ in the ████████████ are thus another way in which Circana sought to conceal the existence of ███████ information it was ██████████████ under § 3.a.2.1 of the Service Level Agreement. At the motion to dismiss stage, and absent briefing from the parties on whether the Agreement is ambiguous as to what it requires in the ████████ the Court declines to preclude NIQ from advancing its fraudulent concealment claims based on the █████ omissions. *See Eternity Glob. Master Fund Ltd.*, 375 F.3d at 178 (holding that, under New York law, a contract is ambiguous when it "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business" (quotation marks omitted)).[2]

Circana contends that, even if it has a legal duty to disclose, that duty arises only from the Agreement, such that NIQ's fraud claim is duplicative of its contract claims. NIQ urges that Circana had a legal duty to disclose separate from this contractual duty because of New York's "special facts" doctrine. (Opp. at 18-22.) But the Court need not reach this question of a separate legal duty because, under *Bridgestone/Firestone*, the Complaint need only satisfy *one* of the three scenarios. *Xeriant, Inc.*, 762 F. Supp. 3d at 354. The Complaint satisfies the second

---

[2] Pertinent to the ambiguity determination, and absent from the briefing here, is whether it is customary in the industry to disclose such ████████████. *Eternity Glob. Master Fund Ltd.*, 375 F.3d at 187. Furthermore, the parties have also not briefed whether the parties' prior course of conduct counsels in favor of one reading or another. "It is well settled that where there is ambiguity in a contract, a court may consider the parties' course of conduct to ascertain the parties' intent." *LG Cap. Funding, LLC v. Protext Mobility, Inc.*, No. 17-CV-3841, 2018 WL 1116571, at *5 (S.D.N.Y. Feb. 28, 2018) (citing *Waverly Corp. v. City of New York*, 48 A.D.3d 261, 265 (1st Dep't 2008)).

scenario, that a plaintiff demonstrates a fraudulent misrepresentation collateral or extraneous to the contract.

In assessing whether a plaintiff has "demonstrate[d] a fraudulent misrepresentation collateral or extraneous to the contract," *Bridgestone/Firestone, Inc.*, 98 F.3d at 20, both New York and federal courts have repeatedly held that "[m]isrepresentations of present facts made post-contract formation are collateral or extraneous to the contract and are actionable in fraud." *Prysm Grp., LLC v. Emeritus Inst. of Mgmt. PTE LTD*, No. 24-CV-9305, 2025 WL 1827274, at *11 (S.D.N.Y. July 2, 2025) (quoting *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 520 (S.D.N.Y. 2016)); *see also Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (1986) (affirming denial of motion to dismiss a fraud in the inducement claim because the complaint "alleged . . . a representation of present fact, not of future intent" (quotation marks omitted)).  Courts have taken different approaches, however, to whether present-fact misrepresentations alone satisfy the second *Bridgestone/Firestone* scenario, or if the present-fact misrepresentation must also be collateral to a contractual agreement.  *See, e.g.*, *Xeriant, Inc.*, 762 F. Supp. 3d at 355-56 (collecting cases).

For substantially the reasons stated in *Xeriant*, 762 F. Supp. 3d at 356-57, the Court adopts the single-requirement approach, under which NIQ need only plead present-fact misrepresentations made post-contract formation for its fraud claim to survive alongside its breach of contract claim.  This approach is supported by Second Circuit and New York precedent.  *See, e.g.*, *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 184 (2d Cir. 2007) ("Defendant's allegations in this case involve misstatements and omissions of present facts, not contractual promises regarding prospective performance. . . .  That the alleged misrepresentations would represent, if proven, a breach of the contractual warranties as well does

not alter the result."); *Eagle Comtronics, Inc. v. Pico Prod., Inc.*, 682 N.Y.S.2d 505, 507 (1998) ("Plaintiff does not allege merely that Defendant entered into the contract while misrepresenting its intent to perform as agreed, but alleges that, after the contract was entered into, defendant repeatedly misrepresented or concealed existing facts.").

Under the single-requirement approach, NIQ's fraudulent concealment claim is not duplicative of its breach of contract claim.[3] The Agreement required Circana to ███████ ████████████████████████████████████████████████████████. (SLA § 3.a.2.1.)  The Complaint alleges that Circana made post-Agreement misrepresentations and omissions in the ████████████████████████, and the Bennett email and attached PowerPoint that either wholly omitted ██████████████ or misrepresented them.  (Compl. ¶¶ 283-90, 437-39, 441.)  These omissions and misrepresentations concerned contemporaneous facts about Circana's then-present performance, satisfying the single-requirement test.  Taking as true NIQ's allegations that Circana concealed and misrepresented the ███████████████████████████████████ that it sold to NIQ, such information, "if known by [NIQ], would have made [Circana's] obligations under the [contract] less valuable to [NIQ]." *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 92 (2d Cir. 2005) (discussing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142 (2d Cir. 1993) and noting that such concealment of "a material defect in the product" sold pursuant to a contract supports a separate fraud claim).  Indeed, the allegations in the Complaint are comparable to the

---

[3] Circana principally relies on a case out of the Eastern District of New York, which rejected a fraud claim that alleged post-contract misrepresentations on the basis that those misrepresentations related directly to whether the plaintiff was entitled to payment pursuant to an agreement. *LaRoss Partners, LLC v. Contact 911 Inc.*, 874 F. Supp. 2d 147, 163 (E.D.N.Y. 2012) (finding the fraud claim duplicative of the contract claim because "[m]ost of the alleged misrepresentations at issue concern whether the Defendants falsely claimed that there were no net revenues . . . and consequently whether the Plaintiff was entitled to any payments pursuant to the Agreement."). *LaRoss Partners* relied on a dual-requirement approach, which this Court declines to follow for the reasons explained above.

allegations present in *Minnie Rose LLC v. Yu*, in which this Court held that "Defendants actively misrepresented present facts" by "actively conceal[ing] the actual price of manufacturing each time they sent Plaintiff invoices." 169 F. Supp. 3d 504, 520-21 (S.D.N.Y. 2016). The Complaint's allegations therefore "constitute more than a mere failure to perform a contractual obligation." *DM Manager LLC v. Fid. Nat'l Info. Servs., Inc.*, No. 23-CV-00617, 2024 WL 1347724, at *8 (S.D.N.Y. Mar. 29, 2024) (holding fraud claim could proceed where plaintiffs alleged that, "after the contract was signed, [d]efendants . . . misrepresented that they were still working on the platform" that was the subject of the parties' contract), *aff'd,* No. 24-1217, 2025 WL 863338 (2d Cir. Mar. 19, 2025) (summary order).

Because the Complaint alleges that Circana concealed and misrepresented present facts as to its ██████████, the fraud claim survives alongside the contract claim.

**B.   ████████   Claims**



Circana also challenges the seventh count of the Complaint, which asserts that Circana breached the Agreement by reporting ██████████████████████ to its clients. (Compl. ¶¶ 363-73.) The Agreement granted NIQ ████████████████████████████████ ████████████████████████████████████████████ (*Id.* ¶ 70; Agmt. § 1.2, App'x A § 2(a).) "████████████" is not elsewhere defined in the Agreement. However, Appendix A to the Agreement provides that both parties had rights to "███████ ████████████████████████████." (Agmt. App'x A § 2(c).)

The Complaint alleges that Circana reported both ████████████████████████ ███ from ReceiptPal, in violation of the Agreement. (Compl. ¶¶ 85-87.) Circana urges dismissal on the ground that the Complaint alleges only that Circana reported on ████████ ██████████████, and that the Agreement provides for ████████████████ ████████████████████████████████████████. (Mem. at 26-

27.) Circana's argument for dismissal thus raises two related questions: (1) whether the ███ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████ ; and (2) whether the products which Circana allegedly reported fall under the ████████ . Neither is suited for resolution at the motion to dismiss stage.

Circana is correct that the allegations in the Complaint largely refer to ████████ ████ , and NIQ's opposition does not seem to address whether the ████████ allows Circana to report on such products. (*See, e.g.,* ECF No. 572-3.) But with all inferences read in the light most favorable to NIQ, the Complaint also alleges that Circana is reporting on ████████████████████████████████████ . (*See* Compl. ¶ 89 (referring to ECF No. 572-4, which discusses in general terms the need " ██████████ ████████████████████████████ "); *id.* ¶ 91 (alleging that Circana has claimed that it has rights to ████████ ).) Thus, there is an open factual question as to whether Circana has reported on ████████████████████████ .

Moreover, Circana's arguments raise an ambiguity in the Agreement as to how " ██████ ████ " is defined. Circana argues that NIQ's own stated view in litigation has been that the categorization of a product depends on ████████████████████ " such that " ████ ████ " is defined only by sale of the product ████████████ . Accordingly, Circana urges the Court to hold NIQ to its own interpretation and conclude that the ████████████ covers all ████████████████████████ . (Mem. at 25-26.) But because the Agreement does not define " ██████████ ," which could reasonably be defined by ████ or by some

other metric,[4] this issue is not suited for disposition at the motion to dismiss stage. Instead, "if the terms of a contract are ambiguous, then 'dismissal of the complaint . . . must be denied.'" *Garson v. Garson*, No. 16-CV-6167, 2017 WL 2915386, at *8 (S.D.N.Y. July 6, 2017) (quoting *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 250 (2014)).

Accordingly, Circana's motion to dismiss the seventh cause of action is denied.

## IV.    Conclusion

For the foregoing reasons, Circana's motion to dismiss the seventh and eleventh causes of action in the Fifth Amended Complaint is DENIED.

Circana shall file its answer to the Fifth Amended Complaint within fourteen days of the date of this order.

~~The parties are directed to confer and submit jointly proposed redactions to this opinion and order within 21 days.~~

~~The Clerk of Court is directed to close the motion at Docket Number 638.~~

~~The Clerk of Court is also directed to file this opinion and order UNDER SEAL — PARTY VIEW ONLY.~~

SO ORDERED.

Dated: ~~January 5, 2026~~
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

*Redactions approved as set forth herein.*
*The Clerk is directed to file this version of the opinion on the public docket.*
*Dated: February 11, 2026.*

---

[4] Indeed, NIQ alleges that Circana has adopted a ▮▮▮▮▮▮▮▮ definition of "▮▮▮▮▮▮" in its interrogatory responses. (Opp. at 29 n.5.)

16