**PAUL**
**HASTINGS**

May 18, 2026

Honorable Katharine H. Parker
U.S. District Court for the
Southern District of New York, Room 750
500 Pearl Street
New York, NY 10007

Re:    Nielsen Consumer LLC d/b/a NIQ v. Circana, LLC, f/k/a The NPD Group L.P., No. 1:22-
cv-3235-JPO-KHP | Letter Motion for Reconsideration and/or Clarification of the Court's
Order of May 5, 2026

Dear Judge Parker:

NIQ writes respectfully to request that the Court reconsider and/or clarify a narrow portion of its
May 5, 2026 Order, which denied NIQ's Motion to Seal a portion of the transcript of the Parties'
Status Conference of April 20, 2026 (the "Order").

In the Order, in reference to two elements of one of NIQ's alleged trade secrets, the Court stated:
"[T]he fact that certain information can be found on ChatGPT negates any contention that this
information is a trade secret or nonpublic."  Dkt. 744 at 5.  Respectfully, the Court's statement
reflects an incorrect understanding of how ChatGPT works.

There is a key distinction between ChatGPT (and other AI tools), on the one hand, and "traditional"
search engines like Google and Westlaw, on the other.  Search engines identify and collate pre-
existing public information, such as articles and the like, in response to user searches or queries.
Essentially, search engines are libraries – only they draw from a worldwide network of sources
(*i.e.*, a global array of computers linked together), and they do so digitally, at phenomenal speed.

Large Language Generative AI Models (emphasis on "generative") like ChatGPT are a different
beast altogether.  They "interact" with users, attempting to learn from them in real time, drawing
on *both* pre-existing materials *and* inputs from the user, in an effort to "generate" plausible
responses to queries. This characteristic is why "large language models [such as ChatGPT]
sometimes guess when uncertain, producing plausible yet incorrect statements instead of admitting
uncertainty." *See* Adam Kalai, et. al.,  *Why Language Models Hallucinate*, Cornell University
(Sept. 4, 2025) https://arxiv.org/abs/2509.04664 (Paper published by OpenAI, which owns
ChatGPT).  *See also In re Prince Global Holdings Limited, et al.,* No. 26-10769, Dkt. 25 at 1
(Bankr. S.D.N.Y. Apr. 18, 2026) (Sullivan & Cromwell admitting that it filed a motion that
inadvertently "include[d] inaccurate citations and other errors . . . includ[ing] artificial intelligence
('AI') 'hallucinations'" which are  "instances in which artificial intelligence tools fabricate case
citations, misquote authorities, or generate non-existent legal sources.").

The notion that a piece of information can be "found on" ChatGPT is not an accurate description
of generative AI technology.  What ChatGPT "says," depends, among other things, on statements
made to it by the user, whether the system being used is open-ended (*i.e.*, public) or "enterprise-

Hon. Katharine H. Parker
May 18, 2026
Page 2

licensed" (*i.e.*, usable, for example, only by the employees of Circana, or NIQ, or Paul Hastings), and what it "believes" the user wants to hear. *See* Maggie Harrison Dupre, *Paper Finds That Leading AI Chatbots Like ChatGPT and Claude Remain Incredibly Sycophantic, Resulting in Twisted Effects on Users*, Futurism (Mar. 30, 2026), https://futurism.com/artificial-intelligence/paper-ai-chatbots-chatgpt-claude-sycophantic; *see also* Zachary Barlow, *Study Finds Bias in LLM Outputs*, The AI Counsel (Aug. 7, 2025), https://theaicounsel.net/blogs/is-bias-baked-into-llms/. Put differently – without suggesting that Circana did such a thing – if a user were to ask ChatGPT something like "can you confirm that 'Trade Secret X' is public information," ChatGPT would be likely to say "yes," and even potentially generate false information to substantiate that response.

In this case, Circana has refused to provide information concerning its "ChatGPT defense" – even, for instance, the exact question(s) Mr. Prakash Tilwani asked ChatGPT in order to prompt it to describe two elements of one of NIQ's alleged trade secrets. And this Court has denied NIQ the right to take limited discovery into Mr. Tilwani's interactions with ChatGPT – which he shared with Circana's counsel – in spite of the fact that Mr. Tilwani is both a key fact witness *and* a purported expert witness for Circana (a decision NIQ is not asking the Court to reconsider at this time). Under such circumstances, NIQ submits that it was not appropriate for the Court to state, in such conclusory fashion, that the two elements of one of NIQ's trade secret are definitively "public" because they "can be found on ChatGPT," and thus unworthy of sealing.

Should the Court deny reconsideration, NIQ respectfully submits that clarification is nevertheless warranted. That would require only that the Court clarify that the quoted sentence from the Court's May 5, 2026 Order was not intended to be a merits ruling on NIQ's trade secrets claim, such that NIQ does not run into "law of the case" type issues as the case progresses towards trial.

Respectfully submitted,

*/s/ Joshua Berman*
Joshua Berman
Paul Hastings LLC
200 Park Avenue
New York, NY 10166
Telephone: 1 (212) 318-6000

*Counsel for Plaintiff-Counterclaim Defendant Nielsen Consumer LLC*